038068/01245/MHW/JAP

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE WALKER, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, S. OBAISI, and LEMKE, <br><br> Defendants. | Case Number 13 cv 7237 <br><br> Judge Sharon Johnson Coleman <br><br> Magistrate Judge M. David Weisman |

### MOTION SUMMARY JUDGMENT BY DEFENDANTS, WEXFORD HEALTH SOURCES, INC. AND SALEH OBAISI, M.D.

NOW COME the Defendants, WEXFORD HEALTH SOURCES, INC. and SALEH OBAISI, M.D., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Fed. R. Civ. P. 56 Motion for Summary Judgment, states as follows:

1.  Plaintiff, GEORGE WALKER, is a 52-year-old inmate at Stateville Correctional Center ("Stateville") who filed a § 1983 civil rights complaint against his primary care physician at the prison, SALEH OBAISI, M.D., and Dr. Obaisi's employer, WEXFORD HEALTH SOURCES, INC., claiming civil rights violations related to, *inter alia*, a failure to timely refer him for further follow-up care at the University of Illinois-Chicago Medical Center ("UIC") and following recommendations of UIC providers; Plaintiff also brought a *Monell* claim against Wexford for having a policy of delaying or deferring his ninety (90) day follow-up medical appointment after his March 2011 surgery. *See* Local Rule 56.1 Statement of Facts by the Wexford Defendants ("SOF"), ¶¶4-5.

2.  The Wexford Defendants have consented to this Court's jurisdiction and venue by admission in its Answer to the Plaintiff's Second Amended Complaint. (SOF at ¶¶ 1-2).

3.  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A genuine dispute as to a material fact only exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

4.  Plaintiff's claims against both Wexford and Dr. Obaisi are barred because the Plaintiff did not exhaust his administrative remedies through the IDOC grievance process. Prisoners must exhaust their administrative remedies before they file suit in court. 42 U.S.C. § 1997(e)(a); *Pavey v. Conley,* 544 F.3d 739, 740 (7th Cir. 2008). First, the relevant Illinois Administrative Code states that the inmate must file a grievance within sixty (60) days of discovery of his complaint. 20 Ill. Admin. Rule §504.810, § 504.850. The Plaintiff's complaint is that he was not sent for a routine ninety (90) day follow-up appointment after his March 2011 surgery. Ninety (90) days after surgery would be on or about June 2011. Thus, the Plaintiff had sixty (60) days from June 2011 to file a grievance for not being sent out for his routine follow-up appointment. However, the Plaintiff did not file any grievance until April 1, 2013 - more than two (2) years after the surgery. (SOF at ¶ 78). The inmate had sixty (60) days to file a grievance; it took him another 640 days.

5.  Second, the Plaintiff failed to properly follow the grievance process. Thus, his claim is barred. Warden Lemke reviewed the Plaintiff's two grievances in this matter. (SOF at

2

¶¶ 78-79). Both grievances contain a stamp labeled "Inmate Issues". (SOF at ¶ 80). Warden Lemke testified that the "Inmate Issues" stamp indicates that a different IDOC department, not affiliated with the grievance process, reviewed the grievances. (*Id.*). Thus, the inmate did not go through the proper channels, and actually tried to circumvent the grievance process. (*Id.*). Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly." *Chess v. Pindelski*, 07 c 5333, 2009 U.S. Dist. LEXIS 4685, *3, 2009 WL 174992 (N.D. Ill. Jan. 23, 2009). Because he did not complete the grievance process, he did not exhaust his administrative remedies.

6. In order to prevail on a claim under § 1983, the Plaintiff must show that Dr. Obaisi acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The burden of proving deliberate indifference rests on the Plaintiff. *Id.* The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

7. In other words, the Plaintiff must establish that Dr. Obaisi actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. *See Sellers*, 41 F.3d at 1102 (emphasis added).

8. Dr. Obaisi lacked subjective notice of the Plaintiff's medical conditions because: (1) Dr. Obaisi did not arrive at Stateville until seventeen (17) months after the Plaintiff's March 2011 spinal surgery; and (2) UIC's treating physician clarified that his orders were only possible

3

types of treatment to consider rather than firm orders for treatment because UIC could not, and did not, identify the cause of the Plaintiff's degeneration until April 2016.

9. Initially, "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016). It is undisputed that Dr. Obaisi took over as Stateville's Medical Director in August 2012. (SOF at ¶ 38). Thus, Dr. Obaisi cannot be liable for Plaintiff's claim that he was not sent out for a three-month follow-up appointment after his March 2011 spinal surgery - because Dr. Obaisi did not work at the prison for another seventeen (17) months.

10 Second, the Plaintiff's generally worded Second Amended Complaint argues that Dr. Obaisi exhibited deliberate indifference because he "failed to facilitate and seek approval for necessary medical treatment…" (Dkt. # 108, ¶ 48(d)). In order to establish subjective knowledge, the plaintiff must show that the "communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance,* 97 F.3d at 993. In other words, the Plaintiff must show that Dr. Obaisi knew, unequivocally, that the Plaintiff required a certain treatment and then failed to secure that treatment.

11. The flaw in the Plaintiff's argument is that until April 2016, there was no known diagnosis for what was causing the Plaintiff's degeneration. (SOF at ¶ 58). He was diagnosed with a motor neuron disease - PLS - in April 2016 by UIC. (*Id.*) Dr. Obaisi initially considered a motor neuron disease as part of his differential diagnosis during his initial consultation with the Plaintiff in September 2012. (SOF at ¶ 38). However, when UIC neurology next saw the Plaintiff, their diagnosis was inconclusive for a motor neuron disease, so they wanted additional testing. (SOF at ¶ 43). Over the next four (4) years, Dr. Obaisi would send the Plaintiff out to

4

different medical services at UIC and each service would come back with new thoughts and new proposed tests in order to try and figure out the root cause of the Plaintiff's constellation of diverse medical complaints (foot drop, slurred speech, thigh pain, radiculopathy). (SOF at ¶¶ 43-58).

12. Because no medical provider could identify what was causing the Plaintiff's degeneration, there was never any communication that mandated a specific treatment; rather, each new proposal from UIC was a suggestion on how to proceed in further diagnosing and treating this Plaintiff. In fact, the independent treating neurologist from UIC testified that the UIC medical notes were just recommendations made from consultants and no communication was an absolute order commanding Dr. Obaisi to obey. (SOF at ¶ 22). Therefore, the Plaintiff's deliberate indifference claim against Dr. Obaisi fails.

13. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

14. Here, the undisputed testimony is that all of Dr. Obaisi's treatment decisions were based on his medical judgment from his education, training, and experience as a medical professional and all treatment fell within the applicable community standard of medical care. (SOF at ¶ 59). As explained by the UIC treating neurologist, UIC acts only as medical consultants in treating Stateville inmates, UIC's recommendations are not firm orders, and the

Stateville primary care physician can decide whether or not to accept UIC's treatment recommendations. (SOF at ¶ 22). Here, Dr. Obaisi routinely ordered the exact treatment that these other medical professionals suggested. Fact discovery has closed and, despite having an expert, the Plaintiff has not identified any other doctor willing to testify that he or she would have treated the Plaintiff any differently than Dr. Obaisi. Accordingly, the Plaintiff's deliberate indifference claim against Dr. Obaisi fails.

15. The Plaintiff has failed to carry his burden of identifying a pattern of neglect by Dr. Obaisi in order to support his claim for constitutional deliberate indifference. A Plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. *Id.*

16. Here, the Record establishes an abundance of care rendered by Dr. Obaisi to this Plaintiff. Since Dr. Obaisi took over as Stateville's Medical Director in August 2012, he has personally examined this Plaintiff no fewer than twelve (12) times. (SOF at ¶¶ 38-40, 42-46, 48, 50, 52, 54, 56). Moreover, Dr. Obaisi has referred, secured approval for, and sent the Plaintiff outside of Stateville for treatment at UIC sixteen (16) times since 2013. (SOF at ¶¶ 43-50, 52-57). Dr. Obaisi also emergently referred the Plaintiff to St. Joseph Hospital for treatment when Dr. Obaisi was concerned that the Plaintiff had developed a blood clot in his leg. (SOF at ¶ 42). Since Dr. Obaisi took over as Medical Director, he has secured approval for the Plaintiff to receive: four (4) MRIs; a CT myelogram study; an offsite x-ray; an EMG nerve conduction study; and spinal fusion and extension surgery along with two weeks of in-patient post-surgical rehabilitation. (SOF at ¶¶ 44, 47, 49, 52-53, 57). No reasonable fact finder could review this Record and determine that Dr. Obaisi's medical treatment exhibited constitutional deliberate

6

indifference to this inmate's serious medical needs. Accordingly, the Plaintiff's deliberate indifference claim fails.

17. The Plaintiff has not met his burden in suing a corporation under § 1983. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). There are two components to this inquiry, first the Plaintiff must show that an unconstitutional policy or practice exists, and then, second, the Plaintiff must show that deliberate indifference occurred as a result of this unconstitutional policy or practice.

18. The Plaintiff alleges two *Monell* violations: (1) that Wexford had in place no policy or practice to alert the Medical Director that a prior approved medical referral had lapsed prior to the treatment being provided and (2) Wexford should not have relied on the practice of UIC physicians scheduling appointments for inmates. (SOF at ¶ 5).

19. Initially, because Plaintiff has not proven deliberate indifference against the individual doctor (Dr. Obaisi); he cannot succeed on his *Monell* claim against Wexford. It is well-settled case law that if there is no underlying constitutional violation by the individual defendant (Dr. Obaisi), a plaintiff cannot prove that his alleged injury resulted from the corporation's (Wexford) official policy of widespread practice. *See Montague v. Wexford Health Sources, Inc.,* 615 Fed. App'x. 378, 379 (7th Cir. 2015) ("There cannot be vicarious liability without primary liability. The individual defendants all prevailed in this suit, so there is no constitutional tort for which Wexford could be vicariously liable.") *citing Los Angeles v. Heller,* 475 U.S. 796 (1986).

20. <u>Second, the Plaintiff has produced no actual policy supporting either position</u>. In fact, the Plaintiff actually secured testimony from Wexford's 30(b)(6) witness that it does not have in place any such policies or practices because delaying or deferring necessary medical treatment would only lead to bad outcomes. (SOF at ¶ 23). Nor does it make sense that Wexford would have an "off the books" policy to provide inadequate medical treatment because such a policy would end up costing Wexford more money in the long-term either through increased medical costs, such as emergency medical treatment, or increased litigation costs. Moreover, the Plaintiff completely ignores the fact that, if at any time, including after the ninety (90) day approval for a post-surgical follow-up at UIC expired, a Wexford medical provider decided that the inmate required a follow-up appointment with the surgeon, he or she could request for Wexford to approve a follow-up appointment with that surgeon. (SOF at ¶ 18).

21. Turning to the second *Monell* requirement, the Plaintiff must show deliberate indifference occurred as a result of this policy or practice. The Plaintiff's own expert conceded that the Plaintiff's condition improved following this surgery, and UIC's neurosurgeon also noted that the Plaintiff's surgery was effective and that his condition improved for approximately two (2) years after his March 2011 surgery. (SOF at ¶ 56. 63). The Plaintiff's independent, treating neurologist at UIC also testified that any failure to send the Plaintiff for a surgical follow-up appointment within three months after surgery did not cause his physical or neurologic condition to worsen. (SOF at ¶ 63). The Plaintiff, himself, admitted that no doctor has ever told him that his condition would have improved had he been sent back to UIC for follow-up within three months of his March 2011 spinal surgery. (SOF at ¶ 64). Thus, the Plaintiff cannot establish that he suffered any harm as a result of any alleged Wexford policy or practice that delayed or prevented his return to UIC for a ninety-day post-surgical follow-up appointment, because all

8

medical testimony and his own statements confirm that he actually *improved* for two (2) years after surgery.

22. In support of this Motion for Summary Judgment, the Wexford Defendants attach a Memorandum of Law and Local Rule 56.1 Statement of Facts, filed concurrently with this Motion.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC. and SALEH OBAISI, M.D. respectfully request that this Honorable Court enter an Order granting summary judgment in their favor, dismissing the case, with prejudice, against it, costs, and for any other relief that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ Joseph A. Panatera
    One of the Attorneys for Defendants,
    WEXFORD HEALTH SOURCES, INC. and
    SALEH OBAISI, M.D.

Matthew H. Weller / ARDC No. 6278685
Joseph A. Panatera / ARDC No. 6288487
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jpanatera@cassiday.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 2, 2016 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Joseph A. Panatera

8395450 JMARUNA;JMARUNA